UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ELIZABETH MARIE BRINKMAN,

        Plaintiff,

    v.

NANCY BERRYHILL,

        Defendant.

Case No. 17-cv-06487-RMI

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 15, 16

    Plaintiff Elizabeth Marie Brinkman seeks judicial review of an Administrative Law Judge ("ALJ") decision denying her application for benefits under Title XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. *See* (dkt. 14) Administrative Record ("AR") 1-5. The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 8, 9) and both parties have moved for summary judgment (dkts. 15, 16). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment in part, deny Defendant's motion for summary judgment in part, and remand for further proceedings.

## LEGAL STANDARDS

    The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

Plaintiff filed an application for Title XVI disability benefits on July 23, 2014, alleging a disability onset of June 1, 2010. (AR 160-69). Plaintiff's application was denied initially on December 26, 2014. (AR 16, 83). Plaintiff filed a request for hearing with an ALJ and a hearing was held on October 14, 2016. (AR 36-59). The ALJ issued an unfavorable decision on January 9, 2017. (AR 13-30). Plaintiff requested review by the Appeals Council and the request for review was denied on September 12, 2017. (AR 1-5).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step evaluation process. (AR 13-30).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date she became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the

claimant will be found not disabled. *See id.* The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 23, 2014, her application date. (AR 18).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: obesity, anxiety disorder, and affective disorder. (AR 18).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id.* If the claimant is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful, the ALJ proceeds to Step Four. *See id.* § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 19).

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See id.* § 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to do the following:  1) lift and carry twenty pounds occasionally and ten pounds frequently; 2)  sit for six hours in an eight-hour day; 3) stand and walk for three hours in an eight-hour day; 4) climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds; and 5) balance, stoop, kneel, crawl, and crouch occasionally. (AR 21). The ALJ further found that Plaintiff must never work at unprotected heights. *Id.* The ALJ found that Plaintiff is limited to the performance of simple, routine tasks and limited to simple work-related decisions. *Id.* Finally, the ALJ found that Plaintiff can respond appropriately to coworkers and the public only on a brief, casual basis, no more than ten percent of the time. *Id.*

At Step Five, the ALJ must determine whether the claimant is able to do any other work

considering her RFC, age, education, and work experience. *See* 20 CFR § 416.920(g). If the claimant is able to do other work, she is not disabled. The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including assembler and lens inserter. (AR 29). Thus, the ALJ found Plaintiff was not disabled since July 23, 2014, the date the application was filed.  (AR 30.)

## FACTUAL SUMMARY

Plaintiff was 27 years old at the time she filed her application for Title XVI disability benefits. (AR 60). Though she graduated from high school with a diploma, it took her five years to complete high school as a result of the onset of anxiety symptoms. (AR 47-48, 583). Plaintiff has an Associate's Degree is Social Sciences from Laney College, but has never been employed. (AR 583). She has lived with her mother her entire life. (AR 583).

Plaintiff has a long history of chronic depression, anxiety, and self-mutilating behaviors, which began in adolescence following the death of her sister from cancer. (AR 584). She tended to isolate at home, did not socialize with peers, and suffered from excessive sleeping, depressed mood, agoraphobia, and panic attacks. (AR 373-377). From August 2006 to May 2012,  Plaintiff received intensive outpatient mental health treatment from STARS Community Services including medication management, therapy, and case management. (AR 369-389). She was diagnosed with Major Depressive Disorder, Recurrent, Severe; Dysthymic Disorder; Anxiety Disorder; Panic Disorder with Agoraphobia; Social Anxiety Disorder; and Borderline Personality Disorder, and was prescribed Lamictal, Benadryl, Xanax, and Prozac. (AR 370, 378).  In November 2010 and again in March 2011, Plaintiff was hospitalized at John George Psychiatric Pavilion for passive suicidal ideation, social isolation, and cutting herself in order to "feel in control," "release stress," and "focus the pain in another part of her body." (AR 32, 322). Through active engagement in treatment at STARS, Ms. Brinkman's symptoms stabilized to some degree, but she continued cutting herself one to two times per month and having recurrent panic attacks on public transportation and in classrooms. (AR 380-381, 373).  After aging out of the STARS program in May 2012, Plaintiff continued to take psychiatric medication prescribed by her providers at Highland Hospital and Sausal Creek Outpatient Stabilization Clinic to manage her ongoing

4

symptoms. (AR 440, 443-448, 458-468).

In February 2014, Plaintiff became a patient of Elisabeth Collins, PMHNP, at Pathways to Wellness, where she received ongoing psychiatric care and was diagnosed with Major Depressive Disorder, Social Anxiety Disorder, and Attention Deficit Hyperactivity Disorder. (AR 394-417, 469-490). In December 2014, Plaintiff began receiving weekly psychotherapy with Carlos Ponce, LMFT, at Multilingual Counseling Center. (AR 451-456, 491-580). As of the date of hearing, October 14, 2016, Plaintiff had attended over 57 individual therapy sessions with Mr. Ponce. (AR 491-574). Despite being actively engaged in treatment and medication compliant, Plaintiff had "little success" in curbing her agoraphobia and continued to experience urges to cut herself, chronic depression, anxiety, and problems with attention. (AR 580, 491-574, 487). In addition to therapy and psychiatric medication treatment, Plaintiff attended a one-time psychological evaluation with Katherine Wiebe, Ph.D. on April 25, 2016. (AR 581-596).

## DISCUSSION

### Evaluation of Medical Opinions

Examining Psychologist, Katherine Wiebe, Ph.D.

Plaintiff contends that the ALJ erred by not giving sufficient weight to the opinion of examining psychologist Katherine Wiebe, Ph.D. Dr. Wiebe conducted a comprehensive psychological evaluation of Plaintiff, which lasted a total of two hours and included ten diagnostic tests, a clinical interview, and a review of all of the medical evidence in the record at the time the evaluation was conducted. (AR 585-586). Testing revealed mild to moderate impairments in attention and concentration, moderate to severe impairments in memory, and moderate to severe impairments in social functioning. (AR 586-587, 595). Plaintiff reported severe symptoms of depression, a history of self-harming behavior, problems with social anxiety, and fears of leaving the house and taking public transportation. (AT 587-589, 585). As a result of Plaintiff's reported symptoms, psychiatric history, and performance on the MCMI-III, Dr. Wiebe diagnosed her with Major Depressive Disorder, Recurrent, Severe; Generalized Anxiety Disorder; Schizoid Personality Disorder; and Dependent Personality Disorder with Avoidant and Depressive Personality Traits. (AR 589-593). Ultimately, Dr. Wiebe assessed primarily moderate and marked

impairments in mental abilities needed to perform unskilled work. (AR 596). Plaintiff argues that the results of testing could reasonably support Dr. Wiebe's diagnosis and her assessment of Ms. Brinkman's functional impairments.

The ALJ gave little weight to the opinion of Dr. Wiebe, stating that "as the report of Dr. Wiebe, clearly, was prepared at the request of the claimant's attorney to assist with the claimant's disability claim, it is somewhat suspect." (AR 25). The Ninth Circuit has expressly held that "[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). "An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id*. In *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998), the Ninth Circuit found that "in the absence of other evidence to undermine the credibility of the medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Similarly, in *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996), the court found the ALJ had erred in rejecting an examining psychologist's opinion on the basis that it was solicited by the claimant's attorney, finding there was no indication of "actual impropriety" and the psychologist's report was based on an examination of a battery of tests.

In this case, the ALJ noted no indication of any impropriety with respect to the opinion of Dr. Wiebe, whose report specifically affirms that "in accordance with the ethical laws of my profession as well as my personal ethics, I have not entered into any arrangement where the amount or payment of my fees is in any way dependent on the outcome of the case" and "the opinions I have expressed represent my true and complete professional opinion." (AR 595). Accordingly, it was error for the ALJ to reject Dr. Wiebe's opinion on the ground that it was solicited by the claimant.

The ALJ provides two other reasons for discounting Dr. Wiebe's opinion, finding that it "overstates the claimant's functional limitations" and is "not consistent with the evidence as a whole." (AR 25). It is impossible for the court to determine what weight the ALJ gave these two additional reasons in forming his decision regarding Dr. Wiebe's opinion. It is therefore impossible for the court to determine whether the ALJ's decision would have been different had

he based his decision only on these two additional reasons. The court must therefore conclude that the ALJ's decision to give little weight to Dr. Wiebe's opinion was not supported by substantial evidence. This is particularly true in light of the court's analysis, set forth below, as to the weight given to the other medical opinions.

<u>Treating Therapist, Carlos Ponce, LMFT</u>

Plaintiff contends that the ALJ erred in assigning little weight to the opinion of treating Licensed Marriage and Family Therapist, Carlos Ponce. The ALJ noted that therapists are not considered "acceptable medical sources" under the Regulations. (AR 26). He also concluded that "the evidence of record does not support [Mr. Ponce's] opinion. *Id*. The ALJ found as follows:

> As for the opinion of Mr. Ponce (Exhibit 7F), the undersigned notes that therapists are not considered an "acceptable medical source" in the Regulations, whose opinions are entitled to weighing as a medical source opinion (20 CFR 416.913). In addition, the evidence of record does not support this opinion. As discussed above, the evidence fails to document ongoing problems with sleep, significant memory loss, or substantial concentration deficits, which would prevent the claimant from finding and keeping a job. To the contrary, repeatedly, records from Pathways to Wellness Medication Clinic document intact memory and fair or good concentration, contrary to the assertions of Mr. Ponce. The GAF score of Mr. Ponce also is inconsistent with his ultimate findings, as it suggests that the claimant only has a moderate level of symptoms. Further, Mr. Ponce is not a vocational expert. As such, his opinion that the claimant's anxiety prevents all work is suspect. Thus, even though the opinion of Mr. Ponce has been duly considered, in view of the evidence as a whole, it is not found to be persuasive.

(AR 26).

Although licensed marriage and family therapists are not "acceptable medical sources" under 20 C.F.R. § 404.1513(a), they are "other sources" under 20 C.F.R. § 404.1513(d), and the ALJ may only disregard their testimony if he "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec*. 613 F.3d 1217, 1223-24 (9th Cir. 2010). SSR 06-03p provides: "Information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p further provides that non-acceptable medical sources should be evaluated under the same factors as all other medical opinions set forth in 20. C.F.R. § 404.1527(d). Significantly, SSR 06-03p notes that "it may be appropriate to give more weight to

7

the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." Plaintiff contends that the ALJ failed to give germane reasons to justify disregarding Mr. Ponce's treatment notes, and failed to evaluate his opinions under the proper factors.

Specifically, Plaintiff argues first that the ALJ did not consider the first factor listed in SSR 06-03p, which is how long the treating source has known and how frequently the source has seen the individual. Mr. Ponce had provided weekly psychotherapy to Plaintiff since January 5, 2017. (AR 574). Mr. Ponce is a licensed marriage and family therapist with a master's degree in transpersonal psychology from John F. Kennedy University. (AR 318). At the time of the hearing, Plaintiff had attended over 57 individual therapy sessions with Mr. Ponce. (AR 491-575). Plaintiff argues that as Plaintiff's primary weekly therapist for two years, Mr. Ponce is in an excellent position to provide an opinion about Plaintiff's symptoms and functional limitations during that time period.

Plaintiff argues second that the ALJ did not consider the third factor listed in SSR 06-03p, which is the degree to which the treating source presents evidence to support his opinion. Mr. Ponce's treatment notes chronicle Plaintiff's fear of leaving the house by herself, her difficulty doing so without her mother present, ongoing symptoms of depression, anxiety, and social isolation, and recurrent urges to harm herself. (AR 491-574). In these notes Plaintiff is frequently described as anxious, depressed, tense, restless, fidgety, avoidant, isolative, unable to calm herself, and having difficulty focusing on a topic. (AR 491-574). Throughout therapy, she struggled through periodic urges to cut herself, and on one occasion in March 2016, Plaintiff called her therapist to report an incident of self-cutting. (AR 514, 516, 540-541, 544-546, 552). These observations are consistent with Mr. Ponce's stated opinions that Plaintiff becomes "panicky and gets paralyzed with fear," and is "unable to control her anxiety," leave her house or take public transportation by herself, "even if she takes medication to reduce her symptoms." (AR 579, 575, 580, 491). It is Mr. Ponce's opinion that despite being actively engaged in therapy and medication compliant, Plaintiff has made "very limited progress," in curbing her agoraphobia and it is Mr.

Ponce's "clinical impression" that she would not tolerate the pressures of either full-time or part-time employment. (AR 500, 580). Ultimately, Mr. Ponce found marked or extreme impairments in functioning, with particular deficits in social functioning. (AR 577-579). The court must agree with Plaintiff that other than briefly summarizing the evidence, the ALJ did not meaningfully examine the degree to which Mr. Ponce's opinion is supported by progress notes from their two-year therapeutic relationship.

Third, the ALJ dismissed Mr. Ponce's treatment notes and opinion statement as "not consistent with the evidence as a whole," but neglected to discuss the evidence which is consistent with Mr. Ponce's opinion. (AR 26). In support of his findings, the ALJ points to records from Pathways to Wellness, which reported global assessment of functioning ("GAF") scores between 50 and 60, and mental status examinations finding intact memory and fair to good judgment, attention, concentration and insight. (AR 23, 25). However, GAF scores offer a mere snapshot of a patient's functioning at that moment in time and Social Security has cautioned against their use in determining disability because they are "neither standardized nor based on normative data" and "the actual number assigned can be misleading because the score does not quantify differences in function between people." Administrative Memorandum, AM-13066(D)(1). As such, "GAF ratings assigned by different clinicians are inconsistent" and "adjudicators cannot draw reliable inferences from the difference in GAF ratings assigned by different clinicians or from a single GAF score in isolation." AM-13066(D)(1). While the ALJ relies heavily on these GAF scores, he does not discuss the observations by Plaintiff's psychiatric provider at Pathways to Wellness, Elisabeth Collins, RN, MS, PMHNP, who noted poor sleep, "profound anxiety," difficulty with social interactions, thoughts of cutting, agoraphobia, inability to leave the house without her mother, and "significant functional impairment" which "prevents client from being able to work," despite medication compliance. (AR 44, 475, 477, 479, 484, 408-410).

Mr. Ponce's treatment notes and opinion are also consistent with the assessment of Dr. Wiebe, who observed Plaintiff to be anxious, depressed, restricted in affect, evincing alexithymia, problems with self-esteem and nervous fidgeting of hands. (AT 585). Dr. Wiebe remarked that Plaintiff seldom leaves home, relies upon her mother for support, avoids taking public

transportation due to fear of anxiety attacks and exhibits "problems with judgment, insight and reasoning that affect her ability to make sound decisions and manage her personal affairs." *Id*. Despite the ALJ's contention that the evidence fails to document significant memory loss or deficits in concentration, Dr. Wiebe reported scores in the borderline to extremely low range on the Immediate Memory and Delayed Memory Indexes of the Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"). Because the ALJ did not address this evidence in his opinion, it is impossible for the court to determine the extent to which the ALJ considered it. *See, e.g. Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that indicate continued, severe impairment").

In summary, the court finds that nothing in his opinion indicates that the ALJ considered the significance of how long Mr. Ponce had known and treated Plaintiff (the first factor listed in SSR 06-03p). The court further finds that the ALJ's analysis of the degree to which Mr. Ponce's notes supported his opinions (the third factor listed in SSR 06-03p), and the degree to which the evidence as a whole was consistent with Mr. Ponce's opinion were incomplete. These three factors addressed by Plaintiff were particularly important, as Mr. Ponce was the medical professional with whom Plaintiff had the longest relationship. Under these circumstances, the court must conclude that the ALJ's rejection of Mr. Ponce's opinion is not supported by substantial evidence.

S. Talwar, M.D.

The ALJ assigned "great weight" to the opinion of Dr. S. Talwar, who opined that Plaintiff had no more than "moderate" impairments in activities of daily living, social functioning, and concentration, persistence and pace. (AR 22, 25-26, 415). Dr. Talwar is a psychiatrist at the outpatient clinic, Pathways to Wellness, and the opinion to which the ALJ refers is the initial assessment conducted when Plaintiff first began receiving treatment at that clinic on February 26, 2014. (AR 411-417). Dr. Talwar only examined Plaintiff once, at that first initial visit. (AR 417, 395-396). After that, Plaintiff's primary treating provider at Pathways to Wellness was Nurse Practitioner, Elisabeth Collins. (AR 396, 469-470). During the 60-minute assessment, Dr. Talwar

conducted a clinical interview and mental status exam. (AR 411-417). He did not review any of Plaintiff's other medical records or perform any other diagnostic tests. (AR 411-417).

Plaintiff contends that because Dr. Talwar met with Plaintiff only once, his opinion should be evaluated by the same standard as any other examining, but non-treating source. 20 C.F.R. § 416.927. The court agrees with Plaintiff that substantial evidence does not support the ALJ's decision to afford great weight to the opinion of this putative "treating" physician who saw Plaintiff once.

Non-examining Physician Brady Dalton, Psy.D.

Plaintiff contends that the ALJ erred in assigning great weight to the opinion of non-examining medical consultant, Brady Dalton, Psy.D. (AR 25-26, 65-66, 68-70.) Dr. Dalton wrote that while Plaintiff's "anxiety is noted to wax and wane, recent notes describe it as mild" and "significant treatment gains are evident with medication adherence." (AR 65). In support, Dr. Dalton notes Plaintiff is independent for self-care and independently uses public transportation. (AR 65). Ultimately, Dr. Dalton assessed Plaintiff with mild impairments in activities of daily living, and moderate impairments in social functioning and concentration, persistence, and pace. (AR 65, 68-70, 25). He suggested she should have no more than brief public contact and only superficial and non-collaborative contact with supervisors and coworkers. (AT 69, 25). Plaintiff argues that Dr. Dalton's opinion should have been afforded the least weight as it was not based on either a treating or an examining relationship with Plaintiff and was based on a very limited record.

Social Security policy dictates that a medical consultant's opinion be more strictly scrutinized than that of a treating or examining source:

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

SSR 96-6p; 20 C.F.R. § 416.927(d)(3).

Dr. Dalton's opinion was based on the limited records presented at the initial level of this

11

claim. (AR 61-62). He did not have the opportunity to review records from Sausal Creek Outpatient Stabilization Clinic, the evaluation of Dr. Wiebe, updated progress notes from Pathways to Wellness or the extensive therapy progress notes from Multilingual Counseling, all of which were submitted at the reconsideration and hearing stages. (AR 34-35). In particular, Dr. Dalton did not review progress notes documenting Plaintiff's increased anxiety and social isolation, panic attacks on public transportation, her need to be accompanied by her mother when leaving the house, and the episode of cutting in 2016. (AR 469-580).

In arguing that the ALJ properly weighed the opinion evidence of Dr. Dalton, Defendant argues that the ALJ noted that the record evidenced only limited treatment during a four-year period from 2009 to 2013. (AR 22). Defendant argues that this gap in treatment "was especially problematic because her medical records showed her symptoms improved or were stable when she took her prescribed medication." *See* (dkt. 16 at 4.) Contrary to Defendant's assertions, the medical evidence shows that Plaintiff has consistently been receiving mental health treatment, with the exception of a period in 2013 when she lost her insurance. Plaintiff received psychiatric medication management and weekly therapy through the STARS program from August 10, 2006 until her discharge in June 2012. (AR 370). In complying with the Department of Social Services' records request, STARS sent copies of Plaintiff's discharge summary, her most recent treatment plan dated December 2011, and her most recent psychiatric progress note dated May 31, 2012. (AR 369-389). These records show that despite being "actively engaged in tx and med compliance" from 2009 through her discharge in 2012, Plaintiff "continued to have panic attacks on public transit and crowded classrooms," one to two episodes of self-cutting per month, and two contacts with emergency psychiatric services in 2010 and 2011 respectively. (AR 373, 377, 321-332). Plaintiff lost her insurance in 2013, but sought out medication refills from her primary care provider at Highland Hospital and Sausal Creek Outpatient Stabilization Center until she was referred for psychiatric services at Pathways to Wellness in February 2014. (AR 440, 458-468). Thus, Defendants' argument of "years-long lack of treatment" is a mistaken characterization of the facts.

Under these circumstances, the court finds that substantial evidence does not support the

ALJ's decision to give great weight to the opinion of this non-examining physician, while discounting the opinions of examining source Dr. Wiebe, and treating therapist Carlos Ponce.

### Credibility of Plaintiff and Her Mother

Plaintiff contends that the ALJ erred in evaluating the credibility of statements made by claimant and her mother. The ALJ discredited the testimony of Plaintiff and a written third party function form prepared by Plaintiff's mother on the ground that Plaintiff's pattern of treatment was inconsistent with that of an individual who suffers from debilitating symptoms. The ALJ noted there were no recurrent emergency room visits or psychiatric hospitalizations and few changes to Plaintiff's medication regimen, hypothesizing that if she suffered from uncontrollable, debilitating symptoms, she would require recurrent emergency room treatment and repeated adjustments to her medications to obtain better control. (AR 28). Secondly, the ALJ found that Plaintiff's allegations of difficulty with memory and concentration were not supported by mental status examinations describing her memory as intact and her attention and concentration as being fair or good. (AR 28). Lastly, the ALJ found that the record contains inconsistent statements about the claimant's activities and ability to function outside the home, pointing to a comprehensive adult function form that Plaintiff filled out on her own behalf as proof that she does not suffer from debilitating deficits in concentration. (AR 28). Defendant argues that the ALJ therefore provided specific and legitimate reasons supported by substantial evidence for discounting some of Plaintiff's and her mother's claims.

The ALJ must accept a claimant's testimony as credible to the extent that it is consistent with other evidence in the record. 20 C.F.R. § 404.1529(c)(4). In order to support a determination that a claimant's testimony regarding subjective symptoms such as pain is not credible, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. When there is no affirmative evidence of malingering, an ALJ may not reject the claimant's testimony about the severity of symptoms without providing "clear and convincing" reasons for doing so. *Reddick*, 157 F.3d at 722. In addition, "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical

13

evidence." SSR 96-7p. The ALJ must consider the entire case record in weighing the credibility of the claimant's statements. 20 C.F.R. § 416.929; *Penny v. Sullivan*, 2 F.3d 953, 958-959 (9th Cir. 1993); SSR 96-7p. Factors the ALJ must consider include: the medical signs and laboratory findings; diagnosis; prognosis; and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individuals medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

Similarly, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. *See also, Nguyen*, 100 F.3d at 1462 (finding lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence that cannot be disregarded without comment); *Dodrill v. Shalala*, 12 F.3d 915, 918-919 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition").

The court agrees with Plaintiff that it was error for the ALJ to discredit statements by Plaintiff and her mother on the ground that Plaintiff's course of treatment was inconsistent with that of someone suffering from a debilitating mental illness. Repeated emergency room visits, psychiatric hospitalizations, and frequent medication changes are not required for a finding of disability. Indeed, one does not need to be "utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Redick*, 157 F.3d. at 722. Though the ALJ highlights reports of Plaintiff doing "well" on her treatment regimen, reports of "improvement" in the context of mental health issues must be interpreted "with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (finding doing well for

purposes of a treatment program has no necessary relation to a claimant's ability to work). Here, the record shows that while medication has been effective at controlling Plaintiff's depressive symptoms, she has continued to experience significant anxiety that impacts her ability to leave her home and function independently in social situations. (AR 469-580). This increased anxiety resulted in increased thoughts of cutting herself in July and August of 2015. (AR 544-552). In early 2016, Plaintiff experienced an increase in her depression and anxiety symptoms, which culminated in an episode of self-cutting in March 2016. (AR 515-523). Despite ongoing therapy and medication compliance, Plaintiff continued to suffer and her therapist frequently noted diminished interest, difficulty calming herself, social isolation, and "extreme" symptoms which "interfere with client's life." (AR 509-511). Mr. Ponce remarked that after more than a year of treatment, Plaintiff was able to come to weekly sessions only if escorted by her mother. (AR 500). According to Mr. Ponce, Plaintiff has tried several strategies to curb her agoraphobia with little success. (AR 580). Thus, while the record shows episodic periods of improvement and some control of symptoms through medication and therapy, nonetheless Plaintiff nonetheless continued to experience debilitating anxiety which markedly impaired her ability to function independently, interact socially, and manage her day-to-day needs without considerable support.

Secondly, the ALJ relied upon mental status examinations to justify discounting Plaintiff's complaints of difficulty with memory and concentration, but ignored other evidence of cognitive impairment. (AR 28). When evaluated by Dr. Wiebe in May 2016, Plaintiff scored in the 4th percentile (borderline range) and 0.2 percentile (extremely low range) on the RBANS Immediate and Delayed Memory Indexes, respectively. (AR 586). As a result of these low scores, Dr. Wiebe assessed Plaintiff with a moderate to severe impairment in memory functioning. (AR 586). The ALJ did not discuss or mention the results of this comprehensive testing. Though Dr. Wiebe found mild impairments in attention and concentration, she noted that Plaintiff's performance on tasks under "structured assessment conditions does not necessarily reflect her ability to perform in a regular work environment." (AR 586, 592-593). Indeed, Dr. Wiebe noted that Plaintiff's psychological impairments "would affect her ability to consistently attend to, remember and follow through with directions and tasks especially with the demands of an employment

situation." (AR 593). The ALJ failed to consider this evidence when evaluating Plaintiff's allegations of problems with memory and concentration. Likewise, Plaintiff's ability to complete a self-report form describing her symptoms and her functional deficits is not substantial evidence that she would be able to concentrate on a sustained basis in a work environment. (AR 28, 249-259). As the ALJ concedes, the SSA-3373, Adult Function Form, could have been prepared in multiple sittings. (AR 28). Indeed, the record does not indicate the amount of time required or how many breaks Plaintiff had to take in order to complete the form. Furthermore, Plaintiff completed this form at home where she feels comfortable and can isolate herself from social interaction and other distractions. Her ability to perform in this kind of low-stress environment, does not mean she would be capable of concentrating on a sustained basis in a work environment with increased demands.

Lastly, the ALJ discredited testimony by Plaintiff and her mother, citing to allegedly inconsistent statements regarding her activities and ability to function outside her home. (AR 28). Contrary to the ALJ's assertions, Plaintiff has consistently reported severe symptoms of depression, anxiety, and panic attacks in social settings which makes her fear social interaction. As a result, Plaintiff has consistently reported isolating herself at home and difficulty leaving the house without her mother for support. In September 2014, Plaintiff reported that she only leaves the house when she has an appointment, usually just a few times per month. (AR 253). While she reported using public transportation, Plaintiff indicated that she needs her mother to go with her if she is experiencing anxiety symptoms. (AR 253). The evidence of record supports this testimony. In December 2014, Plaintiff reported to her psychiatric nurse practitioner, Ms. Collins, that she was afraid to ride the bus and had been isolating at home. (AR 474). Two months later, she reported leaving the house four times per month to go to therapy, but only with her mother. (AR 477). Though Plaintiff has made efforts to get out of the house more, those efforts have been repeatedly stymied by her ongoing mental health symptoms. In June 2015 she experienced a panic attack while waiting for the bus and was forced to call her mother to pick her up. (AR 553). In a February 2016 therapy session with Mr. Ponce, Plaintiff and her mother reported Plaintiff's ongoing difficulty with doing activities alone without mother's support. (AR 518). In May of that

16

same year, Plaintiff reported to Dr. Wiebe that she relies on her mother's support, seldom leaves home, and has difficulty taking public transportation due to fear of anxiety attacks. (AR 585). While the ALJ highlights Plaintiff's efforts to "push through limitations of anxiety and depression," the Plaintiff "should not be penalized for attempting to lead [a] normal li[fe]" in spite of her ongoing struggles and symptoms. (AR 28, 490); *Redick*, 157 F.3d at 722.

In light of the above, the court finds that the ALJ erred in rejecting the statements of Plaintiff and her mother.

**Impairments Meeting or Equaling a Listing and Residual Functional Capacity**

In light of the court's ruling on the above issues, the court will not address the parties' arguments regarding the ALJ's decision regarding whether Plaintiff's condition met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and Plaintiff's RFC. Upon remand, the ALJ must reconsider both of these issues in light of any new findings regarding the weight to be given to the opinions of the medical professionals and the credibility of Plaintiff and her mother.

**Nature of Remand**

Having found that various portions of the ALJ's decision were either erroneous or not supported by substantial evidence, the court must now decide if remand for further proceedings is appropriate. It is well established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). It is equally well established that courts are empowered to affirm, modify, or reverse a decision by the Commissioner, "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id*.

The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988) ("*Varney II*"), where it was held that when "there are no outstanding issues that must be resolved before a proper disability determination can be made, and

17

where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true." Id. at 1401. The doctrine promotes fairness and efficiency, given that remand for further proceedings can unduly delay income for those unable to work and yet entitled to benefits. *Id.* at 1398.

The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, "each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

In this case, the court finds that the third part of the three-part test is not met. Rather, the ALJ must reevaluate the medical opinions addressed here, both separately and in light of each other, and then also reevaluate the credibility of Plaintiff and her mother. Only then can the ALJ properly determine whether Plaintiff meets or equals a listing, and determine Plaintiff's RFC. The court thus rejects Plaintiff's request to remand this case under the credit-as-true rule.

## CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED as follows:

1)  Plaintiff's motion for summary judgment is GRANTED as to the evaluation of medical opinions and as to the credibility of Plaintiff and her mother.

2)  Defendant's motion for summary judgment is DENIED as to the evaluation of medical opinions and as to the credibility of Plaintiff and her mother.

3)  The court declines to rule on the issues of whether Plaintiff's impairments meet or equal a listing pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1 and Plaintiff's RFC.

4) This case is remanded for further consideration consistent with this opinion. A separate judgment will issue.

   **IT IS SO ORDERED.**

Dated: March 4, 2019

_____
ROBERT M. ILLMAN
United States Magistrate Judge